IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DOMINIC WHITE, Derivatively on behalf of Nominal Defendant ATP OIL & GAS CORPORATION, <br><br>    Plaintiff, <br><br> v. <br><br> T. PAUL BULMAHN, BURT A. ADAMS, CHRIS A. BRISACK, ARTHUR H. DILLY, GEORGE R. EDWARDS, KEITH R. GODWIN, ROBERT J. KAROW, BRENT M. LONGNECKER, GEORGE R. MORRIS, ALBERT L. REESE, JR., GERALD J. SWONKE, LELAND E. TATE, and WALTER WENDLANDT, <br><br>    Defendants, <br><br> and <br><br> ATP OIL & GAS CORPORATION, <br><br>    Nominal Defendant. | Civil Action No. _____ <br><br><br> **DEMAND FOR JURY TRIAL** |

## PLAINTIFF'S ORIGINAL SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Dominic White ("Plaintiff") alleges, upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

1.    Plaintiff brings this shareholder derivative action on behalf of ATP Oil & Gas Corporation ("ATP" or the "Company") against ATP's board of directors (the "Board") to recover specific equitable relief for the false and misleading proxy statement filed by the Company with the Securities and Exchange Commission ("SEC") on April

29, 2010 (the "Proxy Statement") and the substantial harm to the Company that followed.

2.      On April 29, 2010, the Board authorized the distribution of the Proxy Statement to solicit the proxies of ATP's stockholders for, among other things, the approval of ATP's 2010 Stock Plan (the "2010 Stock Plan").

3.      The 2010 Stock Plan reserved 6,000,000 shares of ATP common stock for issuance to the Company's officers, directors, employees, and consultants in the form of, among other things, restricted shares, restricted stock bonus awards, and performance share bonus awards.  The 6,000,000 shares reserved for the 2010 Stock Plan represents a dilution overhang of 10.6%.

4.      The Proxy Statement stated that shareholder approval of the 2010 Stock Plan was necessary to "ensure the tax deductibility by ATP of awards" under the 2010 Stock Plan for purposes of Section 162(m) of the Internal Revenue Code ("IRC").  In addition, the Proxy Statement stated that the purpose of the 2010 Stock Plan is to, among other things, reward ATP's officers, employees, and directors "who have made significant contributions" to ATP, "provide incentive and reward opportunities designed to enhance the profitable growth of ATP," and establish a "direct link between the financial interests of [the award recipient] and of ATP's shareholders."  In other words, ATP stockholders were led to believe that approval of the 2010 Stock Plan would provide them with certain tax benefits, and that the 2010 Stock Plan adequately aligned their interests with those of the Company's officers, directors, and employees. As a result, at the Company's Annual Meeting held on June 4, 2010, the Company's stockholders approved the 2010 Stock Plan, subjecting the Company's stock to significant potential dilution.

5.     The Proxy Statement was materially false and misleading and omitted material facts concerning the 2010 Stock Plan.  In particular, (a) awards under the 2010 Stock Plan are not tax deductible under IRC §162(m), contrary to what the Proxy Statement claimed; (b) the 2010 Stock Plan does not align the interests of the Company's officers and directors with that of the Company's shareholders, but rather permits the awarding of excessive and wasteful compensation to ATP's officers and directors to the detriment of the Company; (c) the Proxy Statement failed to disclose that for the past ten years, the Company had been awarding compensation to its officers under its 2000 Stock Plan that was not tax deductible under §162(m); and (d) the Proxy Statement failed to disclose that in 2009, a plan virtually identical to the 2010 Stock Plan that reserved 6,000,000 shares of Company common stock for awards to the Company's officers and directors, was already approved by the Company's stockholders. By disseminating the false and misleading Proxy Statement, the Board violated §14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 17 C.F.R. §240.14a-9 ("Rule 14a-9") promulgated thereunder, and their fiduciary duties under Texas law.

6.     Further, by failing to structure the 2010 Stock Plan to comply with IRC §162(m), structuring the plan to permit the awarding of excessive and unwarranted payments, seeking approval of the 2010 Stock Plan through misrepresentations and omissions in the Proxy Statement, and implementing the 2010 Stock Plan in 2011 and 2012 in a manner that directly contravened the 2010 Stock Plan's stated purpose, the Board has breached their fiduciary duties, wasted corporate assets, and caused the Company to suffer, and to continue to suffer, substantial harm in the form of substantial tax liability, excessive and wasteful compensation payments, and significant dilution.

Accordingly, this action seeks specific equitable relief based on the false and misleading Proxy Statement and the consequential harm to the Company that flowed directly from these wrongs.

## JURISDICTION

7.      Jurisdiction is founded upon federal question jurisdiction, pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331.   This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).   In addition, the Court also has jurisdiction pursuant to diversity of citizenship, 28 U.S.C. § 1332. The defendants are all citizens of jurisdictions other than Oklahoma, the residency of Plaintiff and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.   This action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

8.      Venue is proper in this district as each of the individual defendants are an officer or director of the nominal Defendant, a Texas corporation, whose principal executive officers are in this district, and upon information and belief defendants have engaged in numerous activities and conducted business in this district and/or which had an effect in this district.

## PARTIES

9.      Plaintiff Dominic White is currently, and has continuously been an ATP shareholder since September 2009 to the present.  Plaintiff White is a resident of the state of Oklahoma.

10.      The Company is a corporation organized under the laws of the State of Texas.  It maintains its principal executive offices at 4600 Post Oak Place, Suite 200,

Houston, Texas 77027.  ATP engages in the acquisition, development and production of oil and natural gas properties in the Gulf of Mexico and the U.K. and Dutch Sectors of the North Sea.  The Company's stock is traded on the NASDAQ Global Select Market under the ticker symbol ATPG, and as of January 5, 2012 has 51.62 million shares outstanding.

11.     Defendant T. Paul Bulmahn ("Bulmahn") is the Company's Chief Executive Officer ("CEO").  He is also the chairman of the Board and a member of the Company's board of directors. Bulmahn has served as a director of the Company since 1991. Upon information and belief, Bulmahn is a citizen of Texas.  Bulmahn may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

12.     Defendant Burt A. Adams ("Adams") has served as a director of the Company since 2006. Adams is a member of ATP's compensation committee.  Upon information and belief, Adams is a citizen of Texas. Adams may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

13.     Defendant Chris A. Brisack ("Brisack") has served as a director of the Company since 2002. Brisack is a member of ATP's compensation committee. Upon information and belief, Brisack is a citizen of Texas.  Brisack may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

14.     Arthur H. Dilly ("Dilly") has served as a director of the Company since 2001. Upon information and belief, Dilly is a citizen of Texas.  Dilly may be served with

process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

15.    Defendant George R. Edwards ("Edwards") has served as a director of the Company since 2006. Upon information and belief, Edwards is a citizen of Texas. Edwards may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

16.    Robert J. Karow ("Karow") has served as a director of the Company since 2006. Upon information and belief, Karow is a citizen of Texas.  Karow may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

17.    Brent M. Longnecker ("Longnecker") has served as a director of the Company since March 2010. Upon information and belief, Longnecker is a citizen of Texas.  Bulmahn may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

18.    Gerard J. Swonke ("Swonke") has served as a director of the Company since 1996. Upon information and belief, Swonke is a citizen of Texas.  Swonke may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

19.    Walter Wendlandt ("Wendlandt") has served as a director of the Company since 2001. Wendlandt is a member of ATP's compensation committee.  Upon information and belief, Wendlandt is a citizen of Texas.  Wendlandt may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

20.     Defendants Bulmahn, Adams, Brisack, Dilly, Edwards, Karow, Longnecker, Swonke, and Wendlandt are collectively referred to as the "Director Defendants." The Director Defendants authorized the distribution of the Proxy Statement for the annual meeting of stockholder held on June 4, 2010.

21.     Defendant Leland E. Tate ("Tate") has served as President of the Company since May 2008.  Tate may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

22.     Defendant George R. Morris ("Morris") has served as Chief Operating Officer of ATP since May 2008.  Morris may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

23.     Keith R. Godwin ("Godwin") has served as Chief Accounting Officer of ATP since April 2004.  Goodwin may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

24.     Defendant Albert L. Reese Jr. ("Reese") has served as Chief Financial Officer of the Company since 1999.  Reese may be served with process at 4600 Post Oak Place, Suite 200, Houston, Texas 77027, or wherever else he may be found.

25.     Defendants Bulmahn, Tate, Morris, Godwin, and Reese are collectively referred to as the "Executive Defendants." Collectively, the Director Defendants and the Executive Defendants are referred to as the Defendants.

## SUBSTANTIVE ALLEGATIONS

### Section 162(m) of the Internal Revenue Code

26.     IRC §162(m) subjects publicly held corporations, such as the Company, to special restrictions concerning the compensation paid to a "Covered Employee."   A

Covered Employee consists of the company's Chief Executive Officer and the other three most highly compensated executives of the Company, not including a company's Chief Financial Officer. Defendants Bulmahn, Tate, Morris, and Godwin were the Company's "Covered Employees" for years 2010 and 2011.

27.    Whereas IRC §162(a)(1) generally allows a publicly held corporation to take an income tax deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, IRC §162(m) provides that compensation in excess of $1 million paid by a publicly-held corporation to a Covered Employee is generally not tax-deductible.

28.    IRC §162(m)(4)(C) provides an exception to this rule in the case of "any remuneration payable solely on account of the attainment of one or more performance goals."    Pursuant to IRC §162(m)(4)(C), performance-based compensation is tax deductible if three conditions are satisfied:

> i.    the performance goals are determined by a compensation committee of the board of directors of the taxpayer which is comprised solely of 2 or more outside directors,
>
> ii.    the material terms under which the remuneration is to be paid, including the performance goals, are disclosed to shareholders and approved by a majority of the vote in a separate shareholder vote before the payment of such remuneration, and
>
> iii. before any payment of such remuneration, the compensation committee certifies that the performance goals were met.

29.    §1.162-27 of the Treasury Regulations (Treas. Reg."), promulgated under IRC §162(m), provide rules that must be followed in order for compensation to qualify for the performance-based exception under IRC §162(m)(4)(C).

30.     The $1 million deduction limit and the performance-based exception were enacted by Congress to prevent excessive compensation and to align the performance incentives of certain company executives with the interests of shareholders.  As the Joint Committee of Taxation said, "The $1 million deduction limitation reflects corporate governance issues regarding excessive compensation, rather than issues of tax policy." Joint Committee on Taxation, Report of Investigation of Enron Corporation and Related Entities Regarding Federal Tax and Compensation Issued and Policy Recommendations, 2003 WL 25599037 n.2211 and accompanying text (2003).

31.     The potential tax liability of compensation plans must be disclosed to shareholders. For example, SEC Schedule 14A, 17 C.F.R. §240.14a-101 (Item 8), which contains the information required to be disclosed in a Schedule 14A proxy statement, requires the disclosure of information required by 17 C.F.R. § 229.402(b)(2)(xii), which requires the disclosure of the "impact of the accounting and tax treatments of the particular form of compensation" for the Company's executive officers.

32.     As described in more detail below, the Proxy Statement misled ATP stockholders to believe that the 2010 Stock Plan complied with the requirements of IRC §162(m) and the Treasury Regulations, when in fact they did not.

***The 2010 Stock Plan***

33.     On April 29, 2010, the Company filed the Proxy Statement with the SEC to solicit the proxies of ATP's stockholders for, among other things, the approval of the 2010 Stock Plan.

34.     The 2010 Stock Plan provides for the grant of incentive stock options, nonqualified stock options, stock appreciation rights, restricted shares, restricted stock

bonus awards and performance share bonus awards. In addition, performance share bonus awards can be paid in cash, rather than shares of common stock of ATP.

35.     6,000,000 shares of ATP common stock are reserved for issuance and available for awards under the 2010 Stock Plan.

36.     All employees, directors, and consultants of ATP are eligible to participate under the 2010 Stock Plan.

37.     Approval of the 2010 Stock Plan would provide a benefit to the Company's officers and directors as it would replenish the amount of shares available to be granted as equity-based compensation. As stated in the Proxy Statement: "In view of the limited number of shares remaining under the 2000 Stock Plan available to provide such incentives and the expiration of that plan in February of 2011, the Compensation Committee, which consists entirely of independent directors, has recommended that the Board adopt the 2010 Stock Plan."

38.     Meanwhile, the approval of the 2010 Stock Plan would have a dilutive effect on the Company's public stockholders. As stated in the Proxy Statement, if approved, the 6,000,000 shares reserved for grants would represent a dilutive overhang of 10.6%. As stated in the Proxy Statement:

> The Compensation Committee periodically reviews the dilutive effect of its stock plans on ATP's shareholders (sometimes called "overhang"). As of March 8, 2010, assuming approval of the 2010 Stock Plan, the 6,000,000 shares proposed to be reserved for grants under the 2010 Stock Plan represents an overhang of 10.6%, and ATP's total overhang would be 14.0%.

39.     However, in order to procure shareholder approval, the 2010 Proxy Statement stated certain benefits that approval of the 2010 Stock Plan would provide. The Proxy Statement stated that "Shareholder approval of the 2010 Stock Plan is desired,

among other reasons, *to ensure the tax deductibility by ATP of awards under the 2010 Stock Plan for purposes of Section 162(m) of the Code.*"

40.      In addition, the Proxy Statement stated that the purpose of the 2010 Stock Plan is to, among other things, reward ATP's officers, employees, and directors "who have made significant contributions" to ATP, "provide incentive and reward opportunities designed to enhance the profitable growth of ATP," and establish a "direct link between the financial interests of [the award recipient] and of ATP's shareholders."

41.      In other words, ATP stockholders were led to believe that approval of the 2010 Stock Plan would provide them with certain tax benefits, and that the 2010 Stock Plan adequately aligned their interests with those of the Company's officers, directors, and employees. As a result, at the Company's Annual Meeting held on June 4, 2010, the Company's stockholders approved the 2010 Stock Plan, subjecting the Company's stock to significant overhang.

42.      The Proxy Statement was materially false and misleading and omitted material facts concerning the 2010 Stock Plan.  In particular, (a) awards under the 2010 Stock Plan are not tax deductible under IRC §162(m), contrary to what the Proxy Statement claimed; (b) the 2010 Stock Plan does not align the interests of the Company's officers and directors with that of the Company's shareholders, but rather permits the awarding of excessive and wasteful compensation to ATP's officers and directors to the detriment of the Company; (c) the Proxy Statement failed to disclose that for the past ten years, the Company had been awarding compensation to its officers under its 2000 Stock Plan that was not tax deductible under §162(m); and (d) the Proxy Statement failed to disclose that in 2009, a plan virtually identical to the 2010 Stock Plan that reserved

6,000,000 shares of Company common stock for awards to the Company's officers and directors, was already approved by the Company's stockholders.

***2010 Stock Plan Awards Are Not Tax Deductible Under §162(m) and the 2010 Stock Plan Has Been Designed to Foster Excessive and Wasteful Compensation***

43.     Compensation paid to ATP's Covered Employees under the 2010 Stock Plan is not tax deductible under IRC §162(m) because, among other things, (a) the Board failed to satisfy certain shareholder approval requirements in seeking approval of the 2010 Stock Plan; (b) ATP's compensation committee delegated to ATP's CEO its power to make awards under the 2010 Stock Plan in direct contravention of IRC §162(m)(4)(c)(i); and (c) the terms of the 2010 Stock Plan provides ATP's compensation committee with discretion to increase the amount of compensation payable that would otherwise be due upon attainment of a performance goal in direct contravention of Treas. Reg. §1.162-27(e)(2)(iii).

*Shareholder Approval Requirements of IRC §162(m)(4)*

44.     IRC §162(m)(4)(C)(ii) and Treas. Reg. §1.162-27(e)(4) provide certain shareholder approval requirements that must be met before compensation can qualify as tax deductible performance-based compensation under §162(m).

45.     IRC §162(m)(4)(C)(ii) states that the "material terms" under which the compensation is to be paid, "including the performance goals" must be disclosed to and approved by a majority of the company's shareholders.

46.     Pursuant to Treas. Reg. §1.162-27(e)(4)(i), the material terms that must be disclosed to and approved by shareholders include (a) the business criteria on which the performance goal is based; (b) the employees eligible to receive compensation; and (c) either the maximum amount of compensation that could be paid to any employee or the

formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained.

47.      As stated in Treas. Reg. §1.162-27(e)(4)(v), "to the extent not otherwise specifically provided in this paragraph (e)(4), whether the material terms of a performance goal are adequately disclosed to shareholders is determined under the same standards as apply under the Exchange Act."

48.      The House Conference Report, H.R. Conf. Rep. 103-213 at *588, 1993 WL 302291 (August 4, 1993), reciting the intent of Congress in passing the shareholder approval requirement of IRC §162(m)(4)(C)(ii), states in part that:

> It is intended that not all the details of a plan (or agreement) need be disclosed in all cases. In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary should take into account the SEC rules regarding disclosure. ***To the extent consistent with those rules, however, disclosure should be as specific as possible.***

49.      The materials terms of the 2010 Stock Plan have not been adequately disclosed to and approved by ATP's shareholders.

50.      First, the 2010 Stock Plan fails to disclose the business criteria under which the performance goals are based.  Rather, the 2010 Stock Plan leaves the selection of the performance goals to the complete discretion of the Compensation Committee.

51.      For example, with respect to performance share bonus awards, the 2010 Stock Plan states that ATP's compensation committee shall base the vesting of the award on "***certain performance criteria, whether financial, transactional or otherwise, as determined by the Committee***."  Similarly, in granting restricted stock bonus awards, the 2010 Stock Plan states that the Compensation Committee may condition the vesting of the award "***upon the achievement of performance criteria as determined by the***

*Committee*." With respect to restricted share awards, the 2010 Stock Plan permits ATP's Compensation Committee to condition their vesting upon the attainment of one or more of 13 listed "performance targets," including "*the occurrence of any event or the satisfaction of any other condition specified by the Committee in its sole discretion.*" Indeed, among the 13 listed "performance targets" for restricted shares awards, the 2010 Stock Plan permits ATP's compensation committee to establish the employee participant's "continued employment with the Company" as a performance target, which is in direct contravention of §1.162-27(e)(2)(i), which states: "A performance goal does not include the mere continued employment of the covered employee. Thus, a vesting provision based solely on continued employment would not constitute a performance goal."

52.     Second, the 2010 Stock Plan fails to adequately disclose the maximum amount of compensation that could be paid to any employee, as required by §1.162-27(e)(4)(i).

53.     Pursuant to the 2010 Stock Plan, 6,000,000 shares of ATP common stock are available for awards under the 2010 Stock Plan. With respect to each particular employee, the 2010 Stock Plan states that the maximum number of shares of common stock that may be subject to any one individual "may not exceed 50% of the aggregate number of shares of Common Stock that may be issued" under the 2010 Stock Plan, or in other words, 3,000,000 shares.

54.     Using the $20.54 closing price of ATP common stock on April 29, 2010, the date the Proxy Statement was filed, an award of 3,000,000 shares would equate to a maximum award of $61,620,000 for any individual participant. There is no doubt that the

Company does not intend to award 3,000,000 million shares, or approximately $61,620,000, to any specific participant in that plan. Indeed, in a span of 10 years during the lifetime of ATP's 2000 Stock Plan, the Company awarded just 4 million shares in total to all of its employees, officers, directors, and consultants. Accordingly, the 3,000,000 shares maximum is merely an illusory arbitrary figure placed into the 2010 Stock Plan. In reality, the maximum amount of common stock that could be awarded to any employee under the 2010 Stock Plan has not been disclosed to and approved by ATP stockholders.

55.     Accordingly, because the terms of the 2010 Stock Plan failed to disclose the material terms of the 2010 Stock Plan, any awards made under the 2010 Stock Plan, no matter how they are structured, will never constitute tax-deductible performance-based compensation under IRC §162(m)(4).

56.     Similarly, by failing to adequately disclose the criteria and maximum amount under which compensation under the 2010 Stock Plan could be awarded, the 2010 Stock Plan has not been structured to "enhance the profitable growth of ATP," to reward those "who have made significant contributions to ATP" and to establish a "direct link between the financial interests" of the award recipients and the shareholders.

57.     To the contrary, the 2010 Stock Plan has been designed so as to permit the awarding of excessive and wasteful compensation that has no correlation to the performance of both the award recipient and ATP.  As described above, pursuant to the terms of the 2010 Stock Plan, ATP's compensation committee is not restricted to specific performance-related criteria, but rather can choose any criteria whatsoever under which to award compensation under the 2010 Stock Plan.  In addition, ATP's compensation

committee is not adequately restricted by a maximum amount that it can award.

58.     For example, in any given year, the ATP compensation committee can award 3,000,000 shares to a non-employee director choosing the director's "continued service" with ATP during that year as the "performance" criteria. Using the $7.25 closing price of ATP common stock on May 4, 2012, the 3,000,000 shares would equate to a $21,750,000 value. To suggest that such an award enhances the profitable growth of ATP or rewards the recipient for his significant contributions is troubling to say the least. Moreover, the compensation committee has sole discretion under the terms of the 2010 Stock Plan to settle an award in cash, rather than stock, further alienating the long-term interests of ATP's shareholders with that of the award recipient.

59.     And indeed, during ATP's 2011 fiscal year ending December 31, 2011, the Board implemented the 2010 Stock Plan in direct contravention of its stated purpose, solely for the benefit of the Company's officers.

60.     During the Company's 2011 fiscal year ending December 31, 2011, ATP common stock decreased from an open of $16.75 per share on January 3, 2011 to a close of $7.36 per share on December 30, 2011. The $9.39 per share decrease equates to a 56% decrease in ATP's common stock price, and represents a market capitalization decrease of approximately $489 million. In addition, during the 2011 fiscal year, ATP suffered a net loss attributable to common shareholders of $210 million.

61.     Despite the Company's atrocious performance, on June 27, 2011, Morris, Reese, and Godwin were awarded 26,022, 23,616, and 22,942 shares of restricted stock respectively under the 2010 Stock Plan.  On November 16, 2011, Morris, Reese, and Godwin were awarded 45,000, 45,000, and 40,000 shares of restricted stock respectively

under the 2010 Stock Plan.

62.     As stated in the Company's Schedule 14A Proxy Statement filed with the SEC on April 27, 2012 (the "2012 Proxy"), these restricted stock awards were "subjective, based on market competitive data, company performance, individual performance, and the objectives of retention and motivation, among other factors" and "are not awarded based upon specific qualitative or quantitative targets or goals." Moreover, the vesting requirements imposed on the restricted stock awards were time-based and not tied to any performance criteria.  Thus, contrary to what was claimed in the 2010 Proxy Statement, these awards do not reward officers "who have made significant contributions" to ATP, do not "provide incentive and reward opportunities designed to enhance the profitable growth of ATP," and do not establish a "direct link between the financial interests of [the award recipient] and of ATP's shareholders." Rather, Morris, Reese, and Godwin have been rewarded despite the Company's atrocious performance, and will be able to cash out those rewards simply by continuing to be employed by ATP. Moreover, the awards to Morris and Godwin will not be tax-deductible under  IRC §162(m).

63.     In addition, as stated in the 2012 Proxy, on April 2, 2012, the Board awarded 72,581 shares of restricted common stock to Bulmahn and awarded 35,842 shares of restricted common stock to Tate under the 2010 Stock Plan.  Like the awards to Morris, Reese, and Godwin described above, these awards appear to be time-based and not based on any performance criteria.  As stated in the 2012 Proxy, "The Committee believes that providing compensation in the form of restricted Common Stock benefits ATP by closely aligning compensation with the shareholders' interest in value creation

for ATP. These awards continue to reflect the importance the Committee places on retaining these two individuals for the long-term." Accordingly, contrary to what was claimed in the Proxy Statement, these awards do not reward officers "who have made significant contributions" to ATP, do not "provide incentive and reward opportunities designed to enhance the profitable growth of ATP," and do not establish a "direct link between the financial interests of [the award recipient] and of ATP's shareholders." Rather, Bulmahn and Tate have been rewarded despite the Company's atrocious performance, and will be able to cash out those rewards simply by continuing to be employed by ATP. Moreover, the award to Bulmahn and Tate will not be tax-deducible under IRC §162(m).

*ATP's Compensation Committee Has Delegated its Power to Make Awards to ATP's CEO, in Direct Contravention of §162(m)*

64.     Another requirement that must be met for compensation to Covered Employees to qualify as tax deductible performance-based compensation under IRC §162(m) is that the performance goals must be determined "by a compensation committee of the board of directors of the taxpayer which is comprised solely of 2 or more outside directors."  See IRC §162(m)(4)(c)(i).

65.     The 2010 Stock Plan, however, provides that ATP's compensation committee may delegate its power to make awards and determine the terms of those awards to ATP's Chief Executive Officer for all awards to ATP's officers and employees, other than officers subject to Section 16(a) of the Exchange Act. Defendant Bulmahn is the only officer of the Company subject to Section 16(a) of the Exchange Act.[1]

---

[1]     Section 16(a) of the Exchange Act covers all officers and directors who are the "the beneficial owner of more than 10 percent of any class of any equity security" of the Company. Defendant Bulmahn, the Company's Chief Executive Officer is the only officer of the Company

66.    And in fact, ATP's compensation committee has granted to ATP's Chief Executive Officer, defendant Bulmahn, the authority to establish awards under the 2010 Stock Plan to all of ATP's officers, except himself. As stated in the Schedule 14A Proxy Statement filed with the SEC on April 28, 2011 (the "2011 Proxy"): "The Committee has delegated to the Chief Executive Officer the authority to establish…incentive compensation for all officers of ATP, other than officers subject to Section 16(a) of the Securities Exchange Act of 1934."

67.    Accordingly, the Company has not complied with the requirements of IRC §162(m)(4)(c)(i), and as a result, awards under the 2010 Stock Plan to ATP's Covered Employees will not be entitled a tax deduction under §162(m)(4), contrary to as claimed in the Proxy Statement.

*The 2010 Stock Plan Does Not Preclude Discretion to Increase Compensation upon Achievement of a Performance Goal in Direct Contravention of §1.162-27*

68.    Pursuant to Treas. Reg. §1.162-27(e)(2)(ii), in order to qualify as tax deductible performance-based compensation under IRC §162(m), a performance goal "must state, in terms of an objective formula or standard, the method for computing the amount of compensation payable to the employee if the goal is attained."

69.    The terms of an objective formula or standard must "preclude discretion to increase the amount of compensation payable" that would otherwise be due upon attainment of the goal. §1.162-27(e)(2)(iii)(A).   If compensation is payable upon the attainment of a performance goal, and a change is made to *accelerate* the payment of compensation to an earlier date after the attainment of the performance goal, "the change will be treated as an increase in the amount of compensation, unless the amount of

---

that would be subject to Section 16(a) of the Exchange Act, owning 11.83% of the ATP's common stock as of March 10, 2011 and 12.04% as of April 2, 2012.

compensation paid is discounted to reasonably reflect the time value of money." §1.162-27(e)(2)(iii)(B).

70.     Under the 2010 Stock Plan, ATP's compensation committee has complete discretion to accelerate the payment of performance share bonus awards, which may be paid in either cash or stock, upon achievement of performance criteria. As stated in the 2010 Stock Plan: "Generally, Performance Share Bonuses shall not fully vest in less than one (1) year. Notwithstanding the foregoing, the vesting of Performance Share Bonuses *may be accelerated* upon the achievement of performance criteria as determined by the Committee."

71.     Accordingly, because ATP's compensation committee can accelerate the payment of performance share bonus awards, such awards will not be considered based pursuant to an objective formula, and will thus not qualify as tax deductible performance-based compensation under §162(m).

**ATP's 2000 Stock Plan**

72.     In 2000, the Board and ATP's shareholders approved the 2000 Stock Plan which provided for the grant of stock options and restricted share awards to ATP's officers, employees, directors, and consultants.

73.     4,000,000 shares of ATP common stock were reserved for issuance and available for awards under the 2000 Stock Plan. Among other things, the 2000 Stock Plan permitted ATP's compensation committee to grant restricted share awards upon the attainment of one or more performance targets established by ATP's compensation committee.

74.     As of April 9, 2010, almost all the 4,000,000 shares under the 2000 Stock Plan had been awarded, with only 148,618 shares still available for grants under the 2000 Stock Plan. In any event, the 2000 Stock Plan had a ten year term pursuant to its terms and was set to expire on February 5, 2011.  The Board approved the adoption of the 2010 Stock Plan due to limited number of shares remaining under the 2000 Stock Plan and its pending expiration.

75.     Because the 2000 Stock Plan did not disclose the business criteria under which the performance goals were based, restricted shares awards to ATP's Covered Employees under the 2000 Stock Plan were not tax deductible under the §162(m) performance-based exception. See Treas. Reg. §1.162-27(e)(4)(i).  In addition, because ATP's compensation committee had authority to change the targets under the performance goals from year to year, the material terms of the performance goals needed to be disclosed to and reapproved by ATPs' shareholders in 2005 in order to be tax deductible under the §162(m) performance-based exception.  See Treas. Reg. §1.162-27(e)(4)(vi). The 2000 Stock Plan was never submitted to ATP's shareholders for reapproval and thus, even if awards under the plan were considered tax deductible during its first five years, awards were no longer tax-deductible under §162(m) between 2006 and 2010.

76.     Between 2000 and 2010, the Company had the ability, but failed, to ensure that their 2000 Stock Plan complied with §162(m). Now, upon seeking approval of the 2010 Stock Plan, the Proxy Statement was vouching that awards under the 2010 Stock Plan would be compliant with IRC §162(m). Yet, the Proxy Statement failed to disclose that the Company's 2000 Stock Plan was not compliant with IRC §162(m) and that all

restricted share awards to the Company's Covered Employees under the 2000 Stock over the prior 10 years were not tax deductible under §162(m). This information was materially important for ATP's shareholders in determining whether ATP's compensation committee intended to comply with §162(m) going forward and thus whether to approve the 2010 Stock Plan.

***ATP's 2009 Stock Plan***

77.     By April 9, 2009, there were only 548,726 shares available for grants under the 2000 Stock Plan.   In view of the limited number of shares remaining under the 2000 Stock Plan and the expiration of the plan in February 2011, the Board approved the adoption of a 2009 Stock Plan.

78.     The 2009 Stock Plan would reserve for issuance an additional 6,000,000 shares of ATP common stock for the Company's officers, directors, employees, and consultants.  As compared to the 2000 Stock Plan, the 2009 Stock Plan also authorized two new types of awards - the grant of restricted stock bonus awards and performance share bonus awards.

79.     On April 28, 2009, the Board authorized the distribution of a proxy statement to solicit the proxies of ATP's stockholders for, among other things, the approval of ATP's 2009 Stock Plan.

80.     At the June 5, 2009 annual meeting, ATP shareholders approved the adoption of the 2009 Stock Plan.

81.     The 2009 Stock Plan is virtually identical to the 2010 Stock Plan and violated the same provisions of IRC §162(m) as the 2010 Stock Plan described above.

82.     In soliciting approval of the 2010 Stock Plan, the Proxy Statement failed to disclose to ATP's shareholders that ATP's shareholders had already approved a virtually identical plan just one year earlier.  In being asked to vote on a plan that would cause significant dilution through the issuance of 6,000,000 shares for the Company's officers, directors, and employees, ATP shareholders were entitled to know, and the 2010 Proxy Statement should have disclosed, that a nearly identical stock plan was already in place for the purposes of compensating the Company's officers, directors, and employees.

## HARM TO ATP AND ITS SHAREHOLDERS

83.     As described above, by misleading stockholders into approving the 2010 Stock Plan, ATP stockholders became subject to additional overhang of 10.6%.

84.     Moreover, by failing to structure the 2010 Stock Plan to comply with IRC §162(m), despite contrary claims in the Proxy Statement, ATP shareholders have been harmed as ATP has now subjected itself to potentially millions of dollars of tax liability. Simply by structuring the 2010 Stock Plan to comply with IRC §162(m), the tax liability could have been avoided.

85.     In addition, contrary to as claimed in the Proxy Statement, the 2010 Stock Plan was structured to permit the awarding of excessive and wasteful compensation that has no correlation to the performance of both the award recipient and ATP.

86.     Indeed, as described above, during ATP's 2011 fiscal year and the first few months of 2012, the Board has implemented the 2010 Stock Plan in direct contravention of its stated purpose, and has used the 2010 Stock Plan to award excessive non tax-deductible compensation to the Executive Defendants.

87.     The acts of the Board in distributing the false or misleading Proxy Statement has also injured the Company by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and for compensation plans.

## DEMAND PURSUANT TO TEXAS BUSINESS ORGANIZATION CODE SECTION 21.553

88.     Pursuant to Texas Business Organization Code §21.553, "(a) A shareholder may not institute a derivative proceeding until the 91st day after the date a written demand is filed with the corporation stating with particularity the act, omission, or other matter that is the subject of the claim or challenge and requesting that the corporation take suitable action.  (b) The waiting period required by Subsection (a) before a derivative proceeding may be instituted is not required if:  (1) the shareholder has been previously notified that the demand has been rejected by the corporation; (2) the corporation is suffering irreparable injury; or (3) irreparable injury to the corporation would result by waiting for the expiration of the 90-day period."

89.     Pursuant to Texas Business Organization Code §21.553, in a letter dated February 1, 2012 and delivered to the Company on February 2, 2012, plaintiff made a written demand upon the current ATP Board of Directors, informing the Board of the identity of the alleged wrongdoers; describing the factual basis for the allegations of wrongdoing; describing how such wrongdoing is harmful to the Company; and requesting that the Board take remedial action, including without limitation: correcting the false and misleading statements made in the Proxy Statement and/or amending the 2010 Stock Plan to ensure compliance with Section 162(m) of the Internal Revenue Code; seeking reapproval of ATP's 2010 Stock Plan from ATP's shareholders with the

corrected disclosures; and disgorging all profits and benefits obtained by defendants under the 2010 Stock Plan, as well as losses incurred by the Company as a result of the defendants' misconduct.

90.     The 91st day following the date on which Plaintiff made a demand on ATP pursuant to Texas Business Organization Code §21.553 was approximately May 3rd, 2012.

91.     As of the date of the filing of this Petition, the Company and/or Board have not responded to Plaintiff or Plaintiff's counsel regarding the allegations made in Plaintiff's demand. The Company and/or Board have not notified Plaintiff or Plaintiff's counsel that the Company and/or Board intends to commence an inquiry into the allegations made in Plaintiff's demand, conduct an active review of the allegations made in Plaintiff's demand, or take any remedial steps whatsoever with respect to the allegations raised in Plaintiff's demand.   Accordingly, Plaintiff has instituted this derivative proceeding on behalf of the Company.

## CLAIMS FOR RELIEF

### COUNT I
**Violations of § 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder (Derivative Claim on Behalf of the Company Against Director Defendants)**

92.     Plaintiff realleges the preceding paragraphs as set forth above and incorporates them herein by reference.

93.     The Director Defendants disseminated the Proxy Statement that contained false and misleading statements and omitted material facts, including material information concerning the 2010 Stock Plan.

94.     The acts of the Director Defendants in distributing the materially false and misleading Proxy Statement have injured the Company by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and compensation plans.

95.     As a result of these actions by the Director Defendants, the Company has been and will be damaged.

### COUNT II
### Breaches of Fiduciary Duties
### (Derivative Claim on Behalf of the Company Against Director Defendants)

96.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

97.     Based upon the allegations set forth in the preceding paragraphs, the Director Defendants intentionally or recklessly breached their fiduciary duties of loyalty to the Company and aided and abetted one another in breaching their fiduciary duties to the Company.

98.     The Director Defendants are all eligible to receive compensation under the 2010 Stock Plan. The acts of the Director Defendants in seeking stockholder approval of the 2010 Stock Plan without adhering to IRC §162(m) and the accompanying regulations, despite claiming adherence to IRC §162(m) in the Proxy Statement, constitutes a breach of their fiduciary loyalty to the Company in that these constitute acts and omissions contrary to the best interests of the Company and as to which they had a material conflict of interest.

99.     The acts of the Director Defendants in seeking stockholder approval of the 2010 Stock Plan without setting a reasonable maximum amount payable to each

participant, and in permitting the granting of excessive compensation not aligned with performance constitutes a breach of their fiduciary duty of loyalty to the Company in that these constitute acts and omissions contrary to the best interests of the Company and as to which they had a material conflict of interest.

100.    The acts of the Director Defendants in implementing the 2010 Stock Plan during the 2011 fiscal year and the first four months of 2012 in a manner that directly contravenes the 2010 Stock Plan's stated purpose constitutes a breach of their fiduciary duty of loyalty to the Company.

101.    Each of the Director Defendants had a duty to ensure that ATP disseminated accurate, truthful and complete information to its shareholders. The Director Defendants participated in or had actual or constructive knowledge of the materially false or misleading statements and statements omitting material facts in the Proxy Statement.  The Director Defendants caused and cultivated, and failed to correct the Proxy Statement. As alleged, the Company made numerous statements of material fact that were false and misleading when made or omitted material facts, which were known by the Director Defendants to be false and misleading at that time or omitted material facts, or were recklessly disregarded as such by them. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests and is in violation of their fiduciary duties.

102.    By reason of the foregoing, the Director Defendants have proximately caused significant injury to the Company, which has been, and will continue to be, substantially damaged as the foreseeable result of their wrongful acts and omissions.

## COUNT III
## Waste of Corporate Assets
## (Derivative Claim on Behalf of the Company Against Director Defendants)

103.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104.    The Director Defendants have caused and will cause the Company to waste valuable corporate assets as described above, all of which could have been avoided had the Director Defendants not engaged in the wrongful conduct described herein.

105.    The Director Defendants approved the 2010 Stock Plan in a form that caused the Company to lose substantial tax benefits and to face substantial tax liability, so as to constitute waste.

106.    The Director Defendants approved the 2010 Stock Plan which provides for maximum payments to the Company's officers and directors in amounts so excessive and without correlation to the Company's performance, that no director of ordinary sound business judgment would award, so as to constitute waste.

107.    As a result of this waste of corporate assets, the Director Defendants are liable to the Company.

## COUNT IV
## Unjust Enrichment
## (Derivative Claim on Behalf of the Company Against All Defendants)

108.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

109.    The Director Defendants and Executive Defendants have been, and will be, unjustly enriched at the expense of and to the detriment of ATP, as a result of the

acceptance of awards under a plan that was insufficiently disclosed to the stockholder who were solicited to approve it.

110.    The Director Defendants and Executive Defendants have been, and will be, unjustly enriched at the expense of and to the detriment of ATP, as a result of the Board's implementation of the 2010 Stock Plan in direct contravention of the 2010 Stock Plan's purpose.

111.    Plaintiff, as a shareholder and representative of ATP, seeks restitution from the Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits and other compensation obtained by these Defendants under the 2010 Stock Plan.

112.    As a result of these actions, the Company has been and will be damaged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

A.    For an order declaring void the vote of the stockholder for approval of the 2010 Stock Plan;

B.    An injunction requiring correction of the false and misleading statements in the Proxy Statement;

C.    For an order requiring equitable accounting, with disgorgement, in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

D.    For an order awarding monetary relief, in addition to or in substitution of the specific equitable relief herein requested;

E.    For an order awarding Plaintiff the costs and disbursements of this action,

including reasonable accounts', experts' and attorneys' fees; and

F.     Granting such additional or different relief, including monetary relief,

which the interests of justice or equity may require.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas ID No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
daniel@emmonsjackson.com

Attorney in Charge for Plaintiff

**OF COUNSEL:**

Emmons & Jackson, P.C.
Scott K. Vastine, SBN 24056469
S.D. of Texas No. 743194
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
scott@emmonsjackson.com

## **VERIFICATION**

I, Dominic White, under penalties of perjury, hereby do declare that I am a plaintiff in the foregoing complaint, that I have read the complaint, and that the facts therein are true to my own knowledge, except to matters stated therein to be alleged upon information and belief, and as to those matters, I believe them to be true and correct to the best of my knowledge, information, and belief.


Dated: March _8_ , 2012

Dominic White